DECISION AND JUDGMENT ENTRY
The appellant, Mary Sprinkle, appeals from the judgment of the Washington County Juvenile Court awarding permanent custody of her daughter, Amanda Sprinkle, to the Washington County Children Services Board [hereinafter Children Services]. We affirm.
Amanda Sprinkle, born June 13, 1996, is the child of the appellant, Mary Sprinkle, and Denver McCoy. From the record, we determine that Amanda lived with her mother from birth until the Marietta Police Department removed the child from the mother on August 4, 1997. Children Services, responding to complaints from the neighbors and others, sought and obtained temporary custody of the child in August 1997. Children Services filed the instant action on October 16, 1997, as a dependency complaint, and the court adjudicated the child as dependent on January 7, 1998. Children Services filed a motion for permanent custody on July 20, 1998. After a hearing on January 6, 1999, the court granted the motion and ordered the permanent surrender of Amanda to the Washington County Children Services Board.
Appellant timely filed her appeal of that ruling. Denver McCoy, the natural father of Amanda, did not object to the permanent surrender, nor has he entered his appearance in this appeal.
Appellant raises a single assignment of error for our consideration:
 THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF AMANDA SPRINKLE TO THE WASHINGTON COUNTY CHILDREN SERVICES BOARD.
 Statement of the Case
Children Services became involved with the appellant in April 1996, before the birth of Amanda, because of issues raised concerning the safety of her two older children. Although the father had custody of these children, Children Services received complaints based on the condition of her home. A caseworker found the house "full of belongings" with a two-foot wide path the only clear floor space throughout the house. As a result, Children Services directed that appellant's visitation with her teenage children take place away from her home.
After appellant gave birth to Amanda on June 13, 1996, Children Services received reports that the appellant heard voices, that she would forget to feed the baby, or would leave the child unattended in restaurants. In January 1997, appellant left Marietta to visit her parents in Pennsylvania and did not return to Marietta until later in 1997.
On July 28, 1997, Children Services received a call from a neighbor of the appellant, who reported that the child was crawling unattended in an alley near appellant's home. On August 4, 1997, Children Services received a report from a different neighbor who found Amanda crawling in the alley, again unattended. Responding to this report, Children Services caseworkers found appellant aimlessly driving around the neighborhood. At one point, she ran a red light. When appellant returned home, she parked her car and walked off, leaving the child in the car with the windows up. At that point, the Marietta Police Department arrived and removed the child from the mother. Shortly thereafter, Children Services filed a dependency action in Washington County Juvenile Court, seeking temporary custody of the child.
Although we do not have a record of that action, we discover from the transcript of the October 16, 1997 hearing in this action that the Washington County Juvenile Court granted this earlier request of Children Services for temporary custody. In this earlier proceeding, the court appointed counsel for the appellant. That counsel recommended, and the court ordered, a complete psychological evaluation of the appellant. At the time of this October 16, 1997 hearing, appellant remained under psychological evaluation. Because ninety days had expired since the original placement of the child with Children Services, appellee decided to re-file its original complaint on October 16, 1997, as a new dependency complaint.
At the October 16, 1997 hearing in this matter, the natural father, Denver McCoy, and appellant's appointed attorney from that earlier proceeding appeared, but the appellant did not appear. The court re-appointed that attorney to serve as counsel for appellant in this action and continued the pre-dispositional orders from the earlier action, including the order for psychological evaluation of the appellant. The child remained in the temporary custody of Children Services.
At the adjudicatory hearing on January 7, 1998, appellant was again absent. The court denied a motion by appellant's counsel for continuance, based on the fact that the record reflected appellant had received proper notification of the date and time of the hearing. Testimony by the Children Services caseworker indicated that the condition of appellant's house had not improved since August 1996. The caseworker also testified that appellant failed to attend scheduled visitations with Amanda on a number of occasions and appeared for one visitation wearing clothes soaked with what was believed to be gasoline. In response to a question from appellant's counsel, the caseworker indicated her belief that appellant was mentally ill and would benefit from appropriate treatment. Based on this testimony, the court adjudicated Amanda a dependent child, setting the dispositional hearing for January 12, 1998.
Appellant appeared at the dispositional hearing and did not object to the continued placement of Amanda with Children Services. Nor did she object to the case plan, providing for Amanda to remain in foster care for at least six months. She conceded that her house, in its current condition, was not suitable for a child of such tender years. From the transcript of the six-month review hearing held July 14, 1998, we discover that the appellant had a different residence, but that Children Services had new concerns about this residence, as well as concerns about appellant's new paramour. On July 20, 1998, Children Services filed a motion for permanent custody of Amanda.
The court heard the motion for permanent custody on January 6, 1999. Counsel for Denver McCoy, the natural father, appeared and waived any objections to the permanent surrender. While counsel for the appellant appeared in a timely fashion, appellant was not present at the start of the hearing, but appeared during the testimony of the Children Services caseworker. Upon inquiry by the judge, in open court, appellant waived any objection to the testimony presented during her absence and the hearing proceeded.
The Children Services caseworker testified that inspection of the appellant's new residence in December 1998 presented the same safety and hygiene concerns as were found at her old residence. The halls were filled with old, heavy furniture piled high with books, magazines, and clothes. There was an open gas fireplace in the living room. The caseworker found roaches crawling on the living room furniture and in the kitchen. She found cigarette butts and loose tobacco scattered over counter tops and overflowing ashtrays. One bedroom had little more than a mattress; the other had a bed and two dressers, but clothes were piled halfway up the wall on the dressers.
The appellant stipulated to the introduction of the report of the psychological evaluation into evidence without foundation testimony. The caseworker testified that, while appellant believed she did not have a mental health problem, the psychological evaluation indicated otherwise. Appellant, to the best knowledge of the caseworker, had not attended any counseling session to try to resolve these mental health concerns.
The caseworker also testified that, in the summer of 1998, appellant had appeared one morning for scheduled visitation smelling of alcohol and with dried blood on her hand. Appellant revealed that she had had an argument with her paramour, one "Martin." On December 28, 1998, the caseworker discovered that the Marietta Police Department arrested Martin the previous week for an incident of domestic violence against the appellant.
Appellant received two visits per week with Amanda under earlier orders of the court. The Children Services caseworker testified that appellant missed at least fifty percent of these scheduled visits. For a period of approximately two months, she missed all of her scheduled visits.
Appellant did not object to any of the testimony presented by Children Services, nor did she offer much in the way of testimony or evidence to rebut this testimony. The court, after reviewing the evidence presented, granted the motion for permanent custody. The court, in its entry, found that the child was neither abandoned nor orphaned and that it was not in the best interest of the child to be placed with either of her parents. The court found that the appellant had failed "continuously and repeatedly" to substantially remedy the conditions causing the child to be placed outside the home, citing to R.C. 2151.414(E)(1). The court concluded that it was in the best interest of the child to grant permanent custody to the Washington County Children Services Board and so ordered.
 Opinion
R.C. 2151.353 states that if a child is adjudicated as dependent, the court may commit the child to the permanent custody of a public children services agency. The court must determine, in accordance with R.C. 2151.414(E), that it cannot return the child to either of her parents within a reasonable amount of time. The court must also determine, in accordance with R.C. 2151.414(D), that permanent surrender to Children Services is in the best interest of the child.
Before a state may "sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." Santosky v. Kramer (1982), 455 U.S. 745, 747-748,102 S.Ct. 1388, 1391-1392, 71 L.Ed.2d 599, 602-603.
"Clear and convincing evidence" is defined as that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases. "Clear and convincing" evidence must establish in the mind of the trier of fact a firm belief or conviction as to the facts to be established. See In re Hiatt (1993), 86 Ohio App.3d 716, 725,621 N.E.2d 1222, 1228, citing Cincinnati Bar Assoc. v. Massengale
(1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222, 1223. See, also,In re Lewis (April 30, 1997), Athens App. Nos. 96CA1760, and 97CA1761, unreported. The court must base its findings on one of the factors enumerated under R.C. 2151.414(E). In Re William S.
(1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738, 741.
An appellate court will not overturn the judgment of a lower court where that judgment is supported with some competent, credible evidence going to all essential elements of the case.Vogel v. Wells (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154, 159;C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus. In order to reverse the decision of the trial court, this court must find there is no clear and convincing evidence to support that decision. In re Doe Children
(1994), 93 Ohio App.3d 134, 144-145, 637 N.E.2d 977, 983-984.
Here, the trial court found the appellant failed to remedy the conditions that caused the court to place the child outside the home. R.C. 2151.414(E)(1). The testimony of the Children Services caseworker established that, before the birth of Amanda in 1996, the original residence of the appellant was dirty, cluttered with junk, and otherwise unsuitable for her older children. A year later, at the time of removal, conditions had not improved. Although the appellant changed residences, a subsequent inspection, immediately prior to the hearing on the motion for permanent surrender, revealed the new house to be in as bad a condition for a young child as was the previous one.
However, it was not the condition of the home but appellant's neglect of the child that resulted in the removal of the child from her home. Neighbors observed the child crawling in an alley unsupervised. The day of removal in August 1997, appellant parked her car after driving erratically around the block and walked off, leaving the baby in the car with the windows up.
In determining whether the parent attempted to remedy the conditions that precipitated removal, the court is to consider whether the parent utilized medical, psychiatric, and psychological services made available to her. R.C.2151.414(E)(1). The psychological report submitted to the court, dated September 18, 1998, found that appellant's "cognitive functioning is impaired," and concluded that appellant was unable to care for Amanda at that time. Among the recommendations by the psychologist was that she attend psychotherapy sessions. Yet, the testimony of the Children Services caseworker indicated that the appellant did not believe she had a mental health problem, nor had she received any counseling for her mental health problems.
We are mindful of the established rule that "in proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important."Trickey v. Trickey (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772,774. The trial court has had the benefit of this psychological report and the testimony of the witnesses. The knowledge that the trial court gains by observing the witnesses and the parties cannot be conveyed easily through the printed record. Miller v.Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849.
We find that the State presented clear and convincing evidence to support the grant of permanent custody to the Washington County Children Services Board. See Jones v. Lucas Cty. ChildrenServices Board (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471,472. We find, further, that this evidence supports the judgment of the court, and that the court properly based its judgment on at least one of the factors enumerated by R.C. 2151.414(E). SeeIn re William S., supra.
We, therefore, overrule the appellant's sole assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment appealed from be affirmed and that the appellee recover of the appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Washington County Juvenile Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment and Opinion.
Kline, J.: Concurs in Judgment Only.
For the Court
 By: ______________________________ David T. Evans, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.